UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| WILLIAMS LAND CLEARING, GRADING, ) | |
| AND TIMBER LOGGER, LLC, ) | CASE NO. 22-02094-5-PWM |
| ) | CHAPTER 11 |
| DEBTOR. ) | |

## JOINT MOTION FOR RELIEF FROM STAY

NOW COME Debtor Williams Land Clearing, Grading, and Timber Logger, LLC (hereinafter "Debtor") and secured creditor Mitsubishi HC Capital America, Inc. f/k/a Hitachi Capital America. Corp. ("MHCA") (Debtor and MHCA are hereinafter referred to as "Movant") and hereby jointly move the Court pursuant to 11 U.S.C. §362(d) and Bankruptcy Rule 4001(a)(1) for an order modifying the automatic stay to allow MHCA to take possession of and liquidate or sell certain equipment. In support of this Motion, Movant shows the Court the following:

1. On or about September 10, 2021, Debtor signed a Motor Vehicle Security Agreement (the "Agreement"), pursuant to which Debtor purchased a 2020 Ford F550 truck, with an affixed crane, VIN no. 1FD0W5HT3LEE47208 (the "F550"), and granted Hitachi Capital America Corp. ("HCA") a security interest in the same and in all accessions thereto, including the crane. *See* Agreement attached as Exhibit A.

2. HCA properly perfected its security interest in the F550 by having its lien noted on the title. *See* electronic title information attached as Exhibit B.

3. Effective October 1, 2021, HCA changed its name to Mitsubishi HC Capital America, Inc. *See* Application for Amended Certificate of Authority attached as Exhibit C.

4.  Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on September 16, 2022 (the "Petition Date").

5.  On the Petition Date, MHCA held a properly perfected security interest in the F550.

6.  Debtor has determined that the F550 is not necessary for the Debtor's continued business operations.

7.  In addition, Debtor has determined that the value of the F550 is less than MHCA's claim secured by the Equipment.

8.  Debtor's retention of the F550 would be a detriment to the bankruptcy estate and the creditors of the Debtor.

9.  Debtor and MHCA agree that cause exists to grant MHCA relief from the automatic stay to take possession of and sell or liquidate the F550.

WHEREFORE, the Movant requests the Court enter an order granting relief from the automatic stay pursuant to which:

1.  MHCA shall be permitted to take immediate possession of the F550;

2.  MHCA shall liquidate or sell the F550 in a commercially reasonable manner, and apply the net proceeds of any liquidation or sale to satisfy MHCA's secured claim against the Debtor;

3.  MHCA shall provide the Debtor with an accounting of the sale or liquidation and any proceeds thereof.

4.  To the extent the net proceeds of the sale or liquidation of the F550 exceed MHCA's claim against the Debtor, the surplus proceeds shall be paid to the Debtor.

5.  To the extent that the net proceeds of the sale or liquidation are less than MHCA's claim against the Debtor, MHCA shall have an unsecured claim for the deficiency; and,

6. For such further relief as is just and proper.

This the 27th day of January, 2023.

**STEVENS MARTIN VAUGHN & TADYCH, PLLC**

/s/Kathleen O'Malley
Kathleen O'Malley
N.C. State Bar No. 51654
William Janvier
N.C. State Bar No. 21136
6300 Creedmoor Rd.
Suite 170-370
Raleigh, North Carolina 27612
Telephone: (919) 582-2300
Facsimile: (866) 809-2379
Email: komalley@smvt.com
       wjanvier@smvt.com

**Everett Gaskins Hancock LLP**

/s/James M. Hash
James M. Hash
N.C. State Bar No. 38221
William H. Kroll
N.C. State Bar No. 39149
220 Fayetteville Street
PO Box 911
Raleigh, NC 27601
Telephone: 919-755-0025
Email: james@eghlaw.com
       bill@eghlaw.com

3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILLIAMS LAND CLEARING, GRADING, | ) | |
| AND TIMBER LOGGER, LLC, | ) | CASE NO. 22-02094-5-PWM |
| | ) | CHAPTER 11 |
| DEBTOR. | ) | |

## NOTICE OF MOTION

TO:  The Debtors, Attorneys for Debtor, and all Parties in Interest

NOTICE is hereby given of the Joint Motion for Relief from Stay filed herewith by and through undersigned counsel; and

<u>Your rights may be affected</u>.  You should read these papers carefully and discuss them with your attorney, if you have one, in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.).

If you do not want the Court to grant the requested relief, or if you want the Court to consider your views on the motion, then on or before **Wednesday, February 10, 2023**, unless otherwise ordered, you or your attorney must file with the Court, pursuant to Local Rule 9001-1 and 9014-1, a written response, an answer explaining your position, and a request for hearing.

If you mail your request to the Court for filing, you must mail it early enough so that the Court will receive it on or before the date stated above.  You must also mail a copy to:

Kathleen O'Malley  
William Janvier  
6300 Creedmoor Rd.  
Suite 170-370  
Raleigh, NC 27612  

James M. Hash  
William H. Kroll  
Everett Gaskins Hancock LLP  
P.O. Box 911  
Raleigh, NC 27602  

debtor(s), debtor(s)'s attorney, the bankruptcy administrator, and other parties of interest.

If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted at the date and time set by the Court in its Order.  If no response and no hearing is requested, the Court may grant the relief requested.

If you or your attorney to not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

This the 27th day of January, 2023.

        STEVENS MARTIN VAUGHN & TADYCH, PLLC

        /s/Kathleen O'Malley
        Kathleen O'Malley
        N.C. State Bar No. 51654
        William Janvier
        N.C. State Bar No. 21136
        6300 Creedmoor Rd.
        Suite 170-370
        Raleigh, North Carolina 27612
        Telephone: (919) 582-2300
        Facsimile: (866) 809-2379
        Email: komalley@smvt.com
               wjanvier@smvt.com

        **Everett Gaskins Hancock LLP**

        /s/James M. Hash
        James M. Hash
        N.C. State Bar No. 38221
        William H. Kroll
        N.C. State Bar No. 39149
        220 Fayetteville Street
        PO Box 911
        Raleigh, NC 27601
        Telephone: 919-755-0025
        Email: james@eghlaw.com
               bill@eghlaw.com

## CERTIFICATE OF SERVICE

The foregoing **JOINT MOTION FOR RELIEF FROM STAY AS TO MITSUBISHI HC CAPITAL AMERICA, INC.** and **NOTICE OF MOTION** was served by mailing a copy, postage prepaid, deposited in the United States Mail, enclosed in an envelope which was properly addressed to the persons and entities listed below:

| | |
|---|---|
| Parker Rumley (Via CM/ECF)<br>Bankruptcy Administrator, EDNC<br>434 Fayetteville Street, Suite 640<br>Raleigh, NC 27601 | Williams Land Clearing, Grading, and Timber Logger LLC<br>ATTN: Lamonte Williams<br>1600 Sweetwater Lane<br>Raleigh, NC 27610 |
| William P. Janvier<br>Kathleen O'Malley<br>Stevens Martin Vaughn & Tadych, PLLC<br>6300 Creedmoor Rd.<br>Suite 170-370<br>Raleigh, North Carolina 27612 | |

This the 27th day of January, 2023.

**Everett Gaskins Hancock LLP**

/s/James M. Hash
James M. Hash
N.C. State Bar No. 38221
William H. Kroll
N.C. State Bar No. 39149
220 Fayetteville Street
PO Box 911
Raleigh, NC 27601
Telephone: 919-755-0025
Email: james@eghlaw.com
         bill@eghlaw.com

Application #: 368114                                                                                                    Medium duty

# MOTOR VEHICLE SECURITY AGREEMENT

This Motor Vehicle Security Agreement ("Agreement") dated as of 09/10/2021, by and between Hitachi Capital America Corp. ("Creditor"), a Delaware corporation having a place of business at 800 Connecticut Ave., 4th Floor North, Norwalk CT 06854-1631; and **Williams Land Clearing, Grading, and Timber Logger LLC** (separately and together, the "Buyer") having an address at 316 Cedar Pond Ct, Knightdale, NC 27545-6062; and with Buyer and Creditor, collectively, the "Parties").

1. GRANT OF SECURITY INTEREST: Buyer grants to Creditor a security interest in the vehicle(s) being purchased, listed on Exhibit A attached hereto (collectively the "Vehicle(s)"), and any substitutions, attachments, additions, accessories and equipment then installed in the Vehicle(s) and all replacement parts and all proceeds thereof (collectively the "Collateral"). The term "Agreement" when used herein shall refer to this Agreement and Exhibit A attached hereto, as each may be amended or modified from time to time pursuant to the terms within.

Name and Location of Dealer: **LILLEY INTERNATIONAL INC PO BOX 26837 RALEIGH, NC 27611**

2. OBLIGATIONS SECURED: Each item of Collateral set forth above in Paragraph 1 secures not only the specific amount which Buyer promises to pay pursuant to Paragraph 3, but also all other present and future indebtedness or obligations of Buyer to Creditor and Creditor's affiliates of every kind and nature (collectively the "Indebtedness").

3. PROMISE TO PAY; TERMS AND PLACE OF PAYMENT: Buyer promises to pay the Indebtedness to the Creditor at the rates and upon such terms as provided herein. Buyer, having agreed to purchase the Collateral, desires to finance a portion of the purchase price of the Collateral from Creditor, under the terms and provisions of this Agreement, and agrees with the Creditor as follows:

Description of Trade-In(s) if any:
Gross Allowance ................................................................................................. $0.00
Less Amount Owing To: _____ ......................... $0.00
Trade-In (Net Allowance) ..................................................................................... $0.00

A.  CASH SALE PRICE OF VEHICLE(S) ............................................................................................ $144,950.00
    LICENSE, TAXES and OFFICIAL FEES ....................................................................................... $450.00
    OTHER FEES (FET, Insurance or Warranty fees) ........................................................................... $0.00
    TOTAL COST ................................................................................ $145,400.00

B.  (a) Cash Down Payment ..................................................................................... $0.00
    (b) Net Trade-In Allowance (See above) ............................................................ $0.00
    (c) Other Credits ................................................................................................. $_____
        (Describe):
    TOTAL DOWN PAYMENT .................................................................................. $0.00
C.  DIFFERENCE BETWEEN A & B ....................................................................... $145,400.00

D.  **AMOUNT FINANCED / Credit provided to you or on your behalf: (Difference between A & B................) $145,400.00**
E.  Finance Charge
    (The total amount of interest you will pay) ................... $32,320.48
F.  Total Amount of Payments (D+E) ................................. $177,720.48
G.  Total Sale Price (B+F) .................................................. $177,720.48

**PAYMENT SCHEDULE**: Buyer promises to pay Creditor the AMOUNT FINANCED (Item D above) PLUS interest calculated at a rate per annum of **6.75%** (the "Indebtedness") until all amounts due Creditor hereunder have been fully paid, with such payments to be made in installments as follows:

[X] *For equal successive monthly installments:* ........................................... (a) The term of this obligation shall be **72** months commence on the Date of Acceptance on the Acceptance Certificate. The Buyer shall pay to the Creditor **72** consecutive monthly installments of principal and interest commencing **45-days** from Date of Acceptance on the Acceptance Certificate in the amount of **$2,468.34**. At the end of the term, the entire principal balance together with all accrued interest shall be due and payable, without notice or demand.

[ ] *For equal successive monthly installments plus balloon:* ................................ (b) The term of this obligation shall be **72** months commence on the Date of Acceptance on the Acceptance Certificate. The Buyer shall pay to the Creditor **72** consecutive monthly installments of principal and interest commencing **45-days** from Date of Acceptance on the Acceptance Certificate in the amount of **$2,468.34** and a final balloon installment of principal and interest of **$0.00**. At the end of the term, the entire principal balance together with all accrued interest shall be due and payable, without notice or demand.

[ ] *For non-equal successive monthly installments:* ..................................... (c) The term of this obligation shall be **72** months commence on the Date of Acceptance on the Acceptance Certificate. The Buyer shall pay to the Creditor **72** consecutive monthly installments of principal and interest commencing **45-days** from Date of Acceptance on the Acceptance Certificate in the amount of **$2,468.34**, except for the months of of each year in which the payments will be each. At the end of the term, the entire principal balance together with all accrued interest shall be due and payable, without notice or demand.

AUTO DEBIT AUTHORIZATION (ACH): Automatic electronic payments are: **OPTIONAL.**
If MANDATORY appears, you will be in default of your contracts if you cancel automatic payment. This authorization shall be deemed to be a continuing requirement, and authorization may not be revoked until all obligations of Buyer under this Agreement have been satisfied in full or otherwise terminated.

If MANDATORY appears above, the HITACHI - DIRECT PAYMENT SIGN-UP FORM (ACH) and section 1 of the HITACHI - BILLING SET-UP INFORMATION FORM must be completely filled out and signed where applicable.

If OPTIONAL appears above, the HITACHI - BILLING SET-UP INFORMATION FORM must be completely filled out.

Motor Vehicle Security Agreement                                                                                       Page 1

**EXHIBIT A**

4. **USE OF COLLATERAL:** Buyer represents, warrants and agrees that: (a) the Collateral will be used 100% for business and commercial purposes and not for personal, family or household purposes; (b) the Collateral will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Buyer's business and in conformity with all applicable governmental laws and regulations; (c) the Collateral will remain personal property and not become part of any real property; (d) Creditor may inspect the Collateral at all reasonable times and from time to time; (e) and the Collateral will not be used outside of the Continental United States. Notwithstanding the prohibition from removing the Collateral from the United States, in the event that Buyer contemplates any exporting of the Collateral (including any technology supplied as part of the Collateral), Buyer shall follow all procedures as required by the U.S. Export Administration Regulations and any related export control laws and regulations promulgated and administered by the government of any country having jurisdiction over the parties hereto or the transactions contemplated herein.

5. **PRESERVATION OF COLLATERAL:** Buyer agrees, at its own expense: (a) to do everything necessary to perfect and preserve the security interests of Creditor in the Collateral; (b) to defend any action, proceeding or claim affecting the Collateral including, but not limited to, those affecting any security interest of Creditor obtained hereunder; (c) to pay all losses, costs, expenses and damages incurred by Creditor in enforcing its rights after the occurrence of an event of default hereunder, including reasonable attorneys' fees (equal to at least 20% of all sums then owing hereunder if permitted by law); (d) to promptly pay all taxes, assessments, license fees and any indirect costs incurred including, but not limited to, storage charges, towing charges, parking charges and fines or any other public or private charges when levied or assessed against the Collateral; and (e) if a certificate of title is required or permitted by law, Buyer shall obtain and promptly deliver to Creditor the certificate, showing the security interest of Creditor.

6. **PREPAYMENT:** The Buyer may make prepayments of future amounts due in whole or in part under terms of this Agreement. The prepaid amounts shall be applied to the installments in reverse order of maturity.

7. **LIQUIDATION SETTLEMENT:** (I) Single Vehicle and Collateral Agreement: the Buyer may prepay the indebtedness for a single Vehicle and Collateral hereunder in full (but not in part); (II) Multi Vehicle and Collateral Agreement as listed on Exhibit A: the Buyer may prepay the indebtedness for a single Vehicle and Collateral ("Unit") in full (but not in part); at any time, so long as Buyer is not in default hereunder. Creditor is granted the right to amend the monthly installment and principal balance to account for the prepayment and amended indebtedness of the unpaid portions of the Agreement.

8. **BUYER'S REPRESENTATIONS AND WARRANTIES:** Buyer represents and warrants that: (a) the Collateral was delivered to and accepted by Buyer in satisfactory condition; (b) Buyer is justly indebted to Creditor for the full amount of the Indebtedness set forth herein; (c) except for the security interest granted hereby, the Collateral is free and will be kept free from all liens, claims, security interests and encumbrances; (d) no financing statement covering the Collateral or any proceeds thereof is filed or will be filed in favor of anyone other than Creditor; (e) all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this Agreement are and shall be complete and accurate in all material respects; and Buyer has full power and authority to enter into this Agreement and Buyer has taken all necessary steps to make this Agreement its valid and binding obligation.

9. **CONTINUING OBLIGATIONS:** Buyer agrees that the security interest granted by Buyer to Creditor shall remain in effect irrespective of any retaking or redelivery of the Collateral or any portion thereof and irrespective of the payment of the amount of any of the Indebtedness, so long as there are any obligations of any kind owed by Buyer to Creditor, including obligations under guarantees or assignments.

10. **OWNERSHIP; RISK OF LOSS:** Buyer agrees to pay Creditor all amounts Buyer owes under this Agreement even if the Vehicle(s) or any other Collateral or portion thereof is/are lost, stolen, damaged, destroyed or missing. Unless Buyer obtains Creditor's prior written consent, Buyer will not sell, lease, mortgage, create a lien in, transfer or otherwise dispose of the Collateral, in whole or in part. Buyer is responsible for and will pay when due all repair bills, storage bills, taxes, fines, and other charges and assessments levied on the Collateral. If Buyer fails to pay these amounts, Creditor may do so for Buyer. If Creditor pays any of these charges on Buyer's behalf, Buyer agrees to pay upon demand an administration fee of $100.00 plus any amounts Creditor may have paid on Buyer's behalf, together with interest thereon at the Default Rate defined herein below.

11. **REQUIRED INSURANCE COVERAGE:** Buyer agrees to buy and pay for comprehensive insurance coverage for the term of this Agreement, including fire, theft and combined additional insurance coverage in an amount equal to the full insurable value of the Collateral, as set forth below. Buyer may provide the insurance coverage through an existing policy owned or controlled by Buyer or through a policy obtained from an insurance company of Buyer's choice acceptable to Creditor. The insurance policy must name Creditor as loss payee. In addition, the required insurance policy must provide for 30 days advance written notice to Creditor before the insurance coverage is cancelled, modified or reduced. Buyer agrees to deliver promptly to Creditor certificates of insurance evidencing the required insurance coverage and whatever other written proof of insurance coverage Creditor requests. **NO INSURANCE IS BEING PROVIDED BY CREDITOR.**

| TYPE | AMOUNT |
|---|---|
| **Public liability and property damage** | |
| Less than 33,001 GVW   (Class 1 – 7) | $ 100,000.00 combined single limit (comprehensive automobile liability) per occurrence |
| 33,001 GVW or Greater (Class 8) | $1,000,000.00 combined single limit (comprehensive automobile liability) per occurrence |
| Collision, fire and theft (all risk) | Not less than the actual value of the Collateral from time to time. with Maximum deductible of $1,000.00 |

Buyer's insurance information:
Additional Instructions for supplying verification of insurance coverage are provided on the HITACHI – MINIMUM CUSTOMER INSURANCE REQUIREMENTS form and Buyer must provide an insurance ACORD meeting those requirements.

12. **RIGHT TO COLLECT INSURANCE PROCEEDS:** Buyer hereby assigns to Creditor any monies that may become payable under each such policy of insurance, including returned and unearned premiums, up to the amount of the Indebtedness. Buyer irrevocably constitutes and appoints Creditor as Buyer's attorney-in-fact: (a) to hold each original insurance policy; (b) to make, settle and adjust claims under each policy of insurance; (c) to make claims for any monies that may become payable under such policies and other insurance on the Collateral including returned or unearned premiums; and (d) to endorse Buyer's name on any check, draft or other instrument received in payment of claims or returned or unearned premiums under each policy and to apply the funds to the payment of the Indebtedness or, at Creditor's option, to the repair or replacement of the Vehicle(s). Buyer agrees to cooperate fully with Creditor in collecting insurance proceeds.

13. **INSURANCE CHARGES RETURNED TO CREDITOR:** If any charge for required insurance is returned to Creditor, it may be credited to Buyer's account or used to buy similar insurance or insurance that covers only Creditor's interest in the Collateral. If insurance charges returned to Creditor are credited to Buyer's account, they will be applied to as many of Buyer's installments as they will cover, beginning with the final installment.

14. **FINANCING STATEMENT:** Buyer authorizes Creditor to file a financing statement with respect to the Collateral, signed only by Creditor, and to file a carbon, photographic or other reproduction of this Agreement or of a financing statement. At the request of Creditor, Buyer will execute any financing statements, agreements or documents, in form satisfactory to Creditor, Creditor deems appropriate to obtain and retain a perfected security interest in the Collateral and will pay the cost of filing or recording the same in all public offices deemed necessary or advisable by

Motor Vehicle Security Agreement                                                            Page 2

Creditor. Buyer also agrees to pay all costs and expenses incurred by Creditor in conducting UCC, tax or other lien searches against the Buyer or the Collateral and such other fees as may be agreed.

15. PERFORMANCE: If Buyer fails to perform any of its obligations under this Agreement, Creditor may but is not required to perform same and Buyer shall immediately repay to Creditor any amounts paid by Creditor in such performance, together with interest at the Default Rate as defined herein below. The parties here to expressly agree that the Liquidation Settlement Fee or any make whole payment shall be payable by Buyer notwithstanding any Acceleration of the Indebtedness.

16. FINANCIAL STATEMENTS: During the term of this Agreement, Buyer shall provide Creditor with Buyer's annual audited financial statements and such other annual and quarterly financial statements and other financial information as is reasonably requested by Creditor. Buyer shall notify Creditor, in writing, of any change in name, ownership or control of Buyer within fifteen (15) days of such change.

17. DEFAULT: Buyer is in default of its obligations under this Agreement if: (1) Buyer fails to pay any of the Indebtedness when due; (2) Buyer fails to perform any of its obligations under this Agreement or any other Agreement or debt obligation of Buyer to Creditor or Creditor's Affiliates; (3) any warranty, representation or statement Buyer made or caused to be made is false or breached; (4) the Collateral or any portion thereof is/are lost, stolen, damaged, destroyed, encumbered, levied upon, seized or attached; (5) the Collateral or Any portion thereof is/are sold or leased without Creditor's prior written permission; (6) Buyer assigns its rights under this Agreement; (7) bankruptcy or insolvency proceedings are initiated by or against Buyer; (8) Buyer is unable to pay its debts as they become due; (9) Buyer defaults under any agreement for failure to pay any [material] indebtedness owed to any third party; 10) becomes insolvent; (11) a receiver, or fiscal agent, is appointed for Buyer; (12) Buyer makes an assignment for the benefit of creditors; (13) Buyer is a corporation or partnership and the corporation or partnership dissolves, merges, consolidates or transfers a substantial portion of its property; (14) Creditor in good faith believes that the prospect of payment or performance under this Agreement is impaired; (15) there shall be a material change in the management, ownership or control of Buyer; (16) there shall occur a seizure of control, custody or possession of any Collateral by any governmental authority including, without limitation, any municipal, state, federal or other governmental entity or any governmental agency or instrumentality (all such entities, agencies and instrumentalities shall hereunder be collectively referred to as "Governmental Authority"); (17) anyone in the control, custody or possession of any Collateral or the Buyer is accused or alleged or charged (whether or not subsequently arraigned, indicted or convicted), by any Governmental Authority to have used any Collateral in connection with the commission of any crime (other than a misdemeanor moving violation); (18) Buyer fails to obtain or maintain insurance as required by Paragraph 10 of this Agreement; or (19) any guarantor, surety or endorser for Buyer, ceases to do business as a going concern or defaults in any liability or obligation to Creditor or any guaranty obtained in connection with this transaction is terminated or breached; (20) ACH is deemed Mandatory as indicated by the DIRECT PAYMENT SIGN-UP FORM – LOAN and Buyer at any time during the term of this Agreement fails to provide valid Depository Institution Information and Authorization permitting Creditor to debt a Buyer's bank account for all payments due.

18. REMEDIES: Waiver of any default by Creditor shall not be a waiver of any other default; all of Creditor's rights and remedies are cumulative. Upon the occurrence of an event of default, and as long as the default continues, Creditor may, at its option, with or without notice to Buyer: (a) declare this Agreement to be in default; (b) declare the Indebtedness to be immediately due and payable ("Acceleration"); (c) declare all other debts then owing by Buyer to Creditor to be immediately due and payable; (d) cancel any insurance and credit any refund to the Indebtedness; and (e) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Buyer to assemble the Collateral hereunder or the collateral of any other debt obligations of Buyer to Creditor and deliver it to Creditor at a place to be designated by Creditor which is reasonably convenient to both parties, and to lawfully enter any premises where the Collateral is located without judicial process and take possession thereof. Acceleration of the Indebtedness, if elected by Creditor, shall be subject to all applicable laws including those pertaining to refunds and rebates of unearned charges. Any property that is in or upon the Collateral at the time of repossession may be taken and held without liability until Buyer requests its return. Unless otherwise provided by law, any requirement of reasonable notice that Creditor may be obligated to give regarding the sale or other disposition of collateral will be met if such notice is mailed to Buyer at its address shown herein at least ten (10) days before the time of sale or other disposition. Creditor may buy at any sale and become the owner of the collateral. The inclusion of a trade name or division name in the identification of Buyer hereunder shall not limit Creditor's rights, after the occurrence of an event of default, to proceed against all of Buyer's assets, including those held or used by Buyer individually or under another trade or division name. In the event of a default Buyer irrevocably appoints Creditor as Buyer's attorney-in-fact to execute and endorse all title and transfer documents upon any sale of Collateral. Expenses of retaking, holding, preparing for sale, selling and the like shall include the reasonable fees of any attorneys retained by Creditor (equal to at least 20% of all sums then owing by Buyer to Creditor, if permitted by law) and all other legal costs and expenses incurred by Creditor. Buyer expressly waives all further rights to possession of the Collateral hereunder or the collateral for any other debt obligations of Buyer to Creditor after default hereunder and all claims for injuries or damages suffered through or loss caused by any such entering and/or repossession by Creditor or its agents and representatives.

19. APPLICATION OF PROCEEDS: The proceeds of any sale of or other realization upon all or any part of the repossessed Collateral hereunder other collateral for any other debt obligations of Buyer to Creditor shall be applied in the following order: first, to pay all costs and expenses of such sale or realization, including reasonable attorneys' fees and costs and all other expenses, liabilities and advances incurred or made by the Creditor in connection therewith; second, to the payment of the Indebtedness hereunder and any other debt obligations of Buyer to Creditor, including applicable interest; and finally, to pay to the Buyer or its successors or assigns or, as a court may direct, any surplus then remaining from such proceeds. If, in the event of the sale of or any realization upon the Collateral hereunder or the collateral for any other debt obligations of Buyer to Creditor, the proceeds are insufficient to pay all amounts to which the Creditor is legally entitled, Buyer will be liable for the entire deficiency, together with interest thereon at the maximum rate allowed by law.

20. ASSIGNMENT AND CHANGES IN THIS ASSIGNMENT: Creditor may assign its interest in this Agreement and any guarantees hereof without Buyer's consent. An Assignment of this Agreement constitutes as assignment of any Guarantees hereof unless specifically indicated otherwise in writing by Creditor. Buyer agrees that it may not assign its rights or obligations under this Agreement. No modification or amendment of this Agreement shall be valid unless made in writing and signed by Creditor. No oral changes are binding. The term "Creditor" shall include any assignee of Creditor who is the holder of this Agreement. Buyer's obligations and liabilities hereunder to the assignee will be absolute and unconditional and will not be subject to any abatement, reduction, recoupment, defense, set-off or counterclaim available to Buyer for breach of warranty or for any other reason whatsoever. Any provisions hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable, but shall not invalidate the remaining provisions hereof. Buyer waives all exemptions to the extent permitted by law. Creditor may correct patent errors herein. All of the terms and provisions of this Agreement shall apply to and be binding upon Buyer, its heirs, personal or legal representatives, successors and assigns and shall inure to the benefit of Creditor, its successors and assigns.

21. WAIVER OF CLAIMS AND DEFENSES: To the full extent permitted by applicable law, Buyer hereby waives as to Creditor all claims and defenses which Buyer could assert against the manufacturer, seller or Creditor of the Vehicle(s) or any other aspect of the Collateral.

22. DEFAULT INTEREST: Buyer agrees to pay Creditor, upon default, interest on all sums then owing by Buyer to Creditor at the rate of 18% per annum, if not prohibited by law, otherwise at the highest rate that Buyer can legally obligate itself to pay and/or Creditor can legally collect, until paid in full. All amounts payable hereunder are payable at Creditor's address noted above or at such other address as Creditor specifies from time to time in writing.

23. **LATE FEE AND SECURITY INTEREST**: For each installment not paid within ten (10) days after its due date, Buyer agrees to pay to Creditor a late fee equal to 5% of such installment with such late fee not to be less than $25.00. To secure payment of the total amount due to Creditor hereunder, Creditor retains a lien on and security interest in the Collateral regardless of any retaking and redelivery of the Collateral to Buyer.
24. **DISCLAIMER**: There are no warranties other than those made by the manufacturer of the Collateral. **CREDITOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE COLLATERAL FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.** Creditor shall not under any circumstances be liable for loss of anticipatory or actual profits or for consequential damages of any type whatsoever.
25. **ENTIRE AGREEMENT**: This Agreement contains the final, integrated understanding and agreement between the Parties concerning its subject matter. This Agreement may not be modified or amended in any manner except by a further writing signed by the Parties. If this Agreement is executed by two or more Buyers, they shall be jointly and severally liable under it. Creditor retains the right to correct and / or amend the Agreement and / or Exhibit A to perfect and preserve the security interests in the Vehicle(s) and Collateral without consent, or notification of the Buyer.
26. **MAINTENANCE OF LIEN**: Buyer is responsible for assuring that a lien on the Collateral in favor of the Creditor is properly recorded on any title to the Collateral and that such lien remains in full force and effect until the Indebtedness hereunder has been paid in full to Creditor.
27. **PRIVACY WAIVER**: For any purpose, Creditor may receive from and disclose to any individual, corporation, business, trust, association, company, partnership, joint venture, or other entity (herein collectively, the "Entity"), including, without limitation, Creditor's parent or any affiliate or any subsidiary of Creditor and any credit reporting agency or other entity whether or not related to Creditor, information about Buyer's accounts, credit application and credit experience with Creditor, and Buyer authorizes any Entity to release to Creditor any information related to Buyer's accounts, credit experience and account information regarding the Buyer. This shall be continuing authorization for all present and future disclosures of Buyer's account information, credit application and credit experience on Buyer made by Creditor, or any Entity requested to release such information to Creditor. Buyer consents to the receipt and release of all information required in order for Creditor to comply with its obligations, if any, under the USA Patriot Act.
28. **GOVERNING LAW**: This Agreement shall be governed by the laws of the State of Connecticut, without regard to conflict of law principles. The Parties agree that all actions or proceedings arising in connection with this Agreement may be tried and litigated in the state and federal courts located in the State of Connecticut, or, at the sole option of Creditor, in any other court in which Creditor shall initiate legal or equitable proceedings and that has subject matter jurisdiction over the matter in controversy. Buyer waives any right they may have to assert lack of personal jurisdiction, the doctrine of *forum non conveniens* or to object to venue (or to seek to transfer venue) to the extent any action or proceeding is brought in accordance with this section.
29. **WAIVER OF JURY TRIAL**: **THE CREDITOR AND THE BUYER HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY OR AGAINST EACH OTHER ON, OR IN RESPECT OF, ANY MATTER ARISING OUT OF, RELATING TO OR PERTAINING TO THIS AGREEMENT OR THE INTERPRETATION, BREACH, ENFORCEMENT OR SUBJECT MATTER HEREOF, THE RELATIONSHIP BETWEEN THE BUYER AND THE CREDITOR AND/OR ANY CLAIM OF INJURY OR DAMAGE FROM ANY OTHER RELATIONSHIP BETWEEN THE PARTIES.**
30. **MISCELLANEOUS**: This Agreement is for the benefit of, and may only be enforced by, the respective Parties and their successors and permitted assigns and is not for the benefit of, and may not be enforced by, any third party claiming through Buyer. This Agreement is the product of negotiations between the Parties. Each provision hereof shall be read and interpreted in accordance with its common and ordinary meaning and no ambiguity in language shall be read or interpreted strictly against either Party as the drafter thereof. All notices required or permitted under this Agreement shall be in writing and shall be deemed received if delivered personally to an officer or authorized representative of a Party, or if sent by certified mail, return receipt requested and postage prepaid, to a Party at its address noted above or to such other address for which notice has been given pursuant hereto. Buyer *hereby consents to Creditor obtaining a credit report on Buyer and any personal and/or corporate guarantors of Buyer at the time of execution hereof and semi-annually in the event of a default under this Agreement or any other obligations of Buyer to Creditor and any Guarantees therefor. Copies of this executed Agreement transmitted by facsimile transmission, email or generated through electronic signature/documentation technology shall be considered originals for all purposes*

NOTICE TO BUYER: DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COPY OF THE AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

**Notice to Buyer:** Do not sign this contract in blank. You are entitled to an exact copy of the contract you sign. Keep it to protect your rights. (PA Disclosure)

| CREDITOR: | BUYER: |
|---|---|
| HITACHI CAPITAL AMERICA CORP. | Williams Land Clearing, Grading, and Timber Logger LLC |
| Signature: *Andrea C. Hofer Jr.* | Signature: *[signed]* |
| Name: Andrea C. Hofer-Yusi | Name (print): *Lamonte Williams* |
| Title: Credit Analyst, Hitachi Capital America Corp.  9/16/2021 2:35:48 PM | Title: Managing Member / Member |

Application #: 368114                  Medium duty

## EXHIBIT A

GARAGING ADDRESS: 316 Cedar Pond Ct , Knightdale, NC 27545-6062

| Item # | Year | Make | Model | Vin / Serial # |
|---|---|---|---|---|
| 1 | 2020 | FORD | F550 | 1FD0W5HT3LEE47208 |
| 1 | 2020 | - | BODY | |

Motor Vehicle Security Agreement     Exhibit     Page 1

Application #: 368114                                            Medium duty

## ACCEPTANCE CERTIFICATE

### MOTOR VEHICLE SECURITY AGREEMENT DATED AS OF 09/10/2021 BETWEEN
### HITACHI CAPITAL AMERICA CORP. ("Creditor") AND
### Williams Land Clearing, Grading, and Timber Logger LLC ("Buyer")

The undersigned, acting on behalf of Buyer, acknowledge that the undersigned has personally inspected or caused to be personally inspected to my satisfaction all items of Collateral described in the above Agreement and that the undersigned is duly authorized on behalf of the Buyer to sign and bind the Buyer to the Agreement. Capitalized terms used herein shall have the meanings assigned to them in the Agreement, except, as the context shall require

The Collateral has been received, inspected and installed to Buyer's satisfaction and is complete, operational and in good condition and working order and satisfactory in all respects and conforms to all specifications in the Agreement and the supply contract or other agreement with the Dealer.

Buyer hereby accepts the Collateral, acknowledges that funds have been advanced to or for the account of Buyer in reliance upon this Certificate and the Term of the Agreement commences on the Date of Acceptance stated below. Buyer further acknowledges that this Agreement is NON-CANCELLABLE, ABSOLUTE AND IRREVOCABLE. Buyer hereby authorizes Creditor to advance the Collateral finance proceeds for Buyer's acquisition of the Collateral in reliance on this Acceptance Certificate. Buyer certifies that no Event of Default or event that with notice of lapse of time would become a Default currently exists.

Date of Acceptance: __9/10__, 2021

| CREDITOR:<br>HITACHI CAPITAL AMERICA CORP. | BUYER:<br>Williams Land Clearing, Grading, and Timber Logger LLC |
|---|---|
| Signature: _[signature]_<br>Name: Andrea C. Hofer-Yuki<br>Credit Analyst<br>Hitachi Capital America Corp.<br>Title: | Signature: _[signature]_<br>Name (print): Lamonte Williams<br>Title: Managing Member / Member |

Motor Vehicle Security Agreement - Acceptance Certificate



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Mitsubishi HC Capital America PAA

## Lien and Title Information

### Account Information

| | |
|---|---|
| Account Number | Financed Date |
| Loan Number | Perfected Date |
| Branch | Payoff Date |
| Borrower 1 | Dealer ID |
| Borrower 2 | Dealer |
| Borrower Address | Dealer Address |

### Lienholder

| | |
|---|---|
| ELT Lien ID | 30143706 |
| Lienholder | HITACHI CAPITAL AMERICA CORP |
| Lienholder Address | 800 CONNECTICUT AVENUE<br>4TH FLOOR<br>NORWALK, CT 068541631 |
| Lien Release Date | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| VIN | 1FD0W5HT3LEE47208 | Issuance Date | 9/28/2021 |
| Title Number | 8491212638115 | Received Date | 9/28/2021 |
| Title State | NC | ELT/Paper | ELECTRONIC |
| Year | 2020 | Odometer Reading | 0 |
| Make | FORD | Branding | |
| Model | | | |
| Owner 1 | WILLIAMS LAND CLEARING GRADING AND TIMBER LOGGER LLC | | |
| Owner 2 | | | |
| Owner Address | PO BOX 41671<br>RALEIGH, NC 276291671 | | |

Printed: Wednesday, September 28, 2022 11:22:26 AM PST

EXHIBIT 13

State of North Carolina
Department of the Secretary of State

SOSID: 0435776
Date Filed: 10/5/2021 2:54:00 PM
Elaine F. Marshall
North Carolina Secretary of State
C2021 278 01975

## APPLICATION FOR AMENDED CERTIFICATE OF AUTHORITY

Pursuant to §55-15-04 of the General Statutes of North Carolina, the undersigned corporation hereby applies for an Amended Certificate of Authority to transact business in the State of North Carolina and for that purpose submits the following statement.

1. The name of the corporation is: **HITACHI CAPITAL AMERICA CORP.**

2. The name the corporation is currently using in the State of North Carolina is:

3. The state or country of incorporation is: **Delaware**

4. The date the corporation was authorized to transact business in the State of North Carolina is:
   **08/25/1997**

5. This application is filed for the following reason (*complete all applicable items*):
   a. The corporation has changed its corporate name to:*
      **Mitsubishi HC Capital America, Inc.**
   b. The name the corporation will hereafter use in the State of North Carolina is changed to:
      **Mitsubishi HC Capital America, Inc.**
   c. The corporation has changed its period of duration to:
   d. The corporation has changed the state or country of its incorporation to:

6. Attached is a certificate attesting to the change, duly authenticated by the secretary of state or other official having custody of corporate records in the state of country of incorporation.

7. If the corporation is required to use a fictitious name in order to transact business in this State, a copy of the resolution of its board of directors, certified by its secretary, adopting the fictitious name is attached.

8. This application will be effective upon filing, unless a date and/or time is specified:_____

This the __30th__ day of __September__, 20__21__

HITACHI CAPITAL AMERICA CORP.
Name of Corporation

*/signature/*
Signature

**Doug Hirai, Secretary**
Type or Print Name and Title

NOTES:
1. Filing fee is $75. This application must be filed with the Secretary of State.
2. * If the name of the corporation as changed is unavailable for use in North Carolina, indicate this fact and state the name the corporation wishes to use in North Carolina on 5b. (See NCGS §55-15-06)

BUSINESS REGISTRATION DIVISION    P. O. BOX 29622    RALEIGH, NC 27626-0622
(*Revised July, 2017*)                                           (*Form B-10*)


EXHIBIT C

# Delaware

The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "HITACHI CAPITAL AMERICA CORP.", CHANGING ITS NAME FROM "HITACHI CAPITAL AMERICA CORP." TO "MITSUBISHI HC CAPITAL AMERICA, INC.", FILED IN THIS OFFICE ON THE SIXTH DAY OF AUGUST, A.D. 2021, AT 10:46 O`CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF AMENDMENT IS THE FIRST DAY OF OCTOBER, A.D. 2021.

Jeffrey W. Bullock, Secretary of State

2211234  8100
SR# 20213413104

Authentication: 204313228
Date: 10-04-21

You may verify this certificate online at corp.delaware.gov/authver.shtml

# STATE OF DELAWARE
# CERTIFICATE OF AMENDMENT
# OF CERTIFICATE OF INCORPORATION

**Hitachi Capital America Corp.**
a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware does hereby certify:

**FIRST:** that the Board of Directors and the Sole Shareholder of the corporation desire to change the name of the corporation from Hitachi Capital America Corp. to Mitsubishi HC Capital America, Inc. effective October 1, 2021.

**SECOND:** that, pursuant to Delaware General Corporation Law, Sections 141 and 228, respectively, resolutions of the Board of Directors and Sole Shareholder of Hitachi were duly adopted by a joint unanimous written consent setting forth a proposed amendment of the Certificate of Incorporation of said corporation. The resolution setting forth the proposed amendment is as follows:

**RESOLVED,** that, effective as of October 1, 2021, the Certificate of Incorporation of this corporation be amended by changing the Article thereof numbered "FIRST" so that, as amended, said article shall be and read as follows:

"**FIRST**: The name of the corporation is Mitsubishi HC Capital America, Inc."

**THIRD:** That said amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

**FOURTH:** That the capital of said corporation shall not be reduced under or by reason of said amendment.

**IN WITNESS WHEREOF,** said corporation has caused this certificate to be signed by Douglas Hirai, an Authorized Officer, this 5th day of August, 2021

By: _____
Authorized Officer

Title: SVP, General Counsel & Secretary

Name: Douglas Hirai

State of Delaware
Secretary of State
Division of Corporations
Delivered 10:46 AM 08/06/2021
FILED 10:46 AM 08/06/2021
SR 20212909499 - File Number 2211234